UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JONATHAN HENRY,

                          Plaintiff,

v.                                                              9:10-CV-0456
                                                                (GTS/DEP)
JAMES F. DINELLE, Corrections Officer;
RUSSELL E. DUCKETT, Corrections Officer;
ALFRED J. DELUCA, Corrections Officer;
DONALD L. BROEKEMA, Sergeant; and
JEAN NORTON, Nurse,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

SIVIN & MILLER, LLP                                   EDWARD SIVIN, ESQ.
  Counsel for Plaintiff
170 Broadway, Suite 600
New York, New York 10038

HON. ERIC T. SCHNEIDERMAN                             TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York            Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this prisoner civil rights action filed by Jonathan Henry

("Plaintiff") against the five above-captioned employees of the New York State Department of

Corrections and Community Supervision ("Defendants"), is Defendants' motion for partial

summary judgment.  (Dkt. No. 24.)  For the reasons set forth below, Defendants' motion is

granted in part and denied in part.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint alleges that, between approximately January 29, 2009, and January 31, 2009, at Ulster Correctional Facility in Napanoch, New York, Defendants violated Plaintiff's following rights in the following manner: (1) Defendants Nurse Jean Norton, Corrections Officer James F. Dinelle, Corrections Officer Russell E. Duckett and Corrections Officer Alfred J. DeLuca violated Plaintiff's rights under the First Amendment by filing retaliatory false misbehavior reports against him, and subsequently providing false testimony against him at administrative disciplinary hearings, which resulted in his spending time in the Special Housing Unit ("SHU"); (2) Defendant Dinelle violated Plaintiff's rights under the Eighth Amendment by assaulting him on two occasions, and Defendants DeLuca and Duckett violated Plaintiff's rights under the Eighth Amendment by assaulting him once; (3) Defendant Sergeant Donald L. Broekema violated Plaintiff's rights under the Eighth Amendment by failing to intervene to prevent one of these assaults from occurring; (4) Defendant Norton violated Plaintiff's rights under the Eighth Amendment by harassing him almost immediately before he was subjected to the above-described assaults; and (5) Defendants Norton, Dinelle, Duckett and DeLuca violated Plaintiff's rights under the Fourteenth Amendment by performing the aforementioned acts, which constituted atypical and significant hardships in relation to the ordinary incidents of prison life. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

**B.      Undisputed Material Facts**

At all times relevant to Plaintiff's Complaint, Plaintiff was an inmate and Defendants were employees of the New York Department of Corrections and Community Supervision at Ulster Correctional Facility.  On January 30, 2009, Defendant Dinelle took Plaintiff to the medical ward, because Plaintiff was experiencing a foul odor and oozing from a wound on his leg.  After Defendant Norton treated Plaintiff, she filed an inmate misbehavior report against Plaintiff based on (1) Plaintiff's harassing behavior toward Defendant Norton and Defendant Dinelle, and (2) Plaintiff's disobedience of a direct order to be quiet.  The misbehavior report was signed by Defendant Dinelle as an employee witness.

At his deposition, Plaintiff testified, while leaving the infirmary, he was punched and kicked by Defendant Dinelle and two unknown prison officials.  Plaintiff was then taken to the SHU, where he waited with Defendants Dinelle and Duckett, and up to three more individuals, for a sergeant to arrive.  When Defendant Broekema (a sergeant) arrived at the SHU, Plaintiff was taken to a frisk room, where a frisk was conducted.  During the frisk, Defendants Dinelle, Duckett and (Plaintiff suspected) DeLuca used force to bring Plaintiff to the ground.  Plaintiff testified that, during the use of force, he was simultaneously punched in the nose by two officers while their supervisor watched.

After the use of force, Plaintiff stated to Defendants Dinelle, Broekema and Duckette, "I will be contacting my attorney," or "I will be calling a lawyer."[1]  Plaintiff never used the term "grievance" when addressing Defendants Dinelle, Broekema and Duckette (or Defendant

---

[1]      (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7.1 Response]; *see also* Dkt. No. 24, Attach. 4, at 100, 102-03 [attaching pages 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33, at 2-3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.].)

Norton).[2]  Subsequently, Defendant Duckett filed an inmate misbehavior report against Plaintiff

based on his disobedience of frisk procedures and a direct order.  Defendant DeLuca signed this

report as a witness to the events.

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is

assumed in this Decision and Order, which (again) is intended primarily for review by the

parties.  (*Id*.)

C.     **Defendants' Motion**

Generally, in support of their motion for partial summary judgment, Defendants argue as

follows: (1) Plaintiff's claim that Defendants issued false misbehavior reports should be

dismissed because Plaintiff has no constitutional right to be free of false misbehavior reports; (2)

Plaintiff's First Amendment retaliation claim should be dismissed because he has failed to

adduce admissible record evidence from which a rational factfinder could conclude that he (a)

engaged in protected activity, or (b) suffered adverse action as a result of engaging in protected

activity; (3) Plaintiff's Fourteenth Amendment substantive due process claim should be

dismissed because he has failed to adduce admissible record evidence from which a rational

factfinder could conclude that Defendants deprived Plaintiff of his liberty rights; (4) Plaintiff's

Eighth Amendment excessive-force claim against Defendant Norton should be dismissed

because Plaintiff has failed to adduce admissible record evidence from which a rational

factfinder could conclude that she (a) used force against Plaintiff, or (b) was in a position to

---

[2]        (*Compare* Dkt. No. 24, Attach. 9, at ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt.
No. 27, Attach. 3, at ¶ 17 [Plf.'s Rule 7.1 Response]; *see also* Dkt. No. 24, Attach. 4, at 59-60,
100, 102-03 [attaching pages 175, 176, 216, 218 and 219 of Trans. of Plf.'s Depo.]; Dkt. No. 33,
at 2-3 [attaching pages 228 and 229 of Trans. of Plf.'s Depo.]. )

prevent the use of force from occurring, yet failed to do so; (5) Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"; (6) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema should be dismissed because Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Broekema had a realistic opportunity to intervene to prevent or stop the assault, yet failed to do so; and (7) Defendants are protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].).[3]

In Plaintiff's response to Defendants' motion for partial summary judgment, he argues as follows: (1) his retaliation claims should not be dismissed because there are triable issues of fact as to whether Defendants retaliated against him for stating that he would be contacting an attorney; (2) his failure-to-intervene claim against Defendant Broekema should not be dismissed because there are triable issues of fact as to whether Defendant Broekema failed to prevent excessive force from being used against him; (3) his excessive-force claim against Defendant DeLuca should not be dismissed because there are triable issues of fact as to whether Defendant DeLuca used excessive force against him; and (4) Defendants are not protected from liability, as a matter of law, by the doctrine of qualified immunity, under the circumstances. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)[4]

---

[3]     In their motion, Defendants do not challenge the evidentiary sufficiency of Plaintiff's Eighth Amendment excessive-force claim against Defendants Dinelle or Duckett. (*See generally* Dkt. No. 24, Attach. 10 [Defs.' Memo. of Law].)

[4]     Plaintiff does not oppose Defendants' arguments that (1) Plaintiff's excessive-force claim against Defendant Norton should be dismissed, and (2) Plaintiff's substantive due process claim should be dismissed. (*See generally* Dkt. No. 27, Attach. 5 [Plf.'s Response Memo. of Law].)

In their reply, Defendants essentially reiterate their previously advanced arguments.  (*See generally* Dkt. No. 29, Attach. 1 [Defs.' Reply Memo. of Law].)

## II.  RELEVANT LEGAL STANDARDS

### A.  Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.  Legal Standards Governing Plaintiff's Claims

#### 1.  First Amendment Retaliation Claim

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.  *See Gill v. Pidlypchak,* 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that, in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of his First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

      To prevail on a First Amendment claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that (1) the speech or conduct at issue was "protected", (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights, and (3) there was a causal connection between the protected speech and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d Cir. 2001]).  Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

      In determining whether an inmate has established a prima facie case of a causal connection between his protected activity and a prison official's adverse action, a number of factors may be considered, including the following: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation.  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).  Even where the inmate has established such a prima facie case, the prison official may be entitled to judgment as a matter of law on the inmate's retaliation claim where the prison official has satisfied his burden of establishing that

7

the adverse action would have been taken on proper grounds alone.  *Lowrance v. Achtyl*, 20 F.3d

529, 535 (2d Cir. 1994); *Jordan v. Garvin*, 01-CV-4393, 2004 WL 302361, at *6 (S.D.N.Y. Feb.

17, 2004).

> ## 2.    Eighth Amendment Claims of Excessive-Force and Failure-to-Intervene

To establish a claim of excessive-force under the Eighth Amendment, a plaintiff must

satisfy two components: "one subjective, focusing on the defendant's motive for his conduct, and

the other objective, focusing on the conduct's effect."  *Wright v. Goord*, 554 F.3d 255, 268 (2d

Cir. 2009).  In consideration of the subjective element, a plaintiff must allege facts which, if true,

would establish that the defendant's actions were wanton "'in light of the particular

circumstances surrounding the challenged conduct.'"  *Id.* (quoting *Blyden v. Mancusi*, 186 F.3d

252, 262 [2d Cir. 1999]).  The objective component asks whether the punishment was

sufficiently harmful to establish a violation "in light of 'contemporary standards of decency.'"

*Wright*, 554 F.3d at 268 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 [1992]).

Generally, officers have a duty to intervene and prevent such cruel and unusual

punishment from occurring or continuing.  *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir.

2001); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "It is well-established that a law

enforcement official has an affirmative duty to intervene on behalf of an individual whose

constitutional rights are being violated in his presence by other officers."  *Cicio v. Lamora*,

08-CV-0431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (Peebles, M.J.).  A corrections

officer who does not participate in, but is present when an assault on an inmate occurs may still

be liable for any resulting constitutional deprivation.  *Id.* at *8.  To establish a claim of failure-to-

intervene, the plaintiff must adduce evidence establishing that the officer had (1) a realistic

opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y 2008). Generally, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Parker v. Fogg*, 85-CV-177, 1994 WL 49696 at *8 (N.D.N.Y. Feb. 17, 1994) (McCurn, J.).

### 3.   Fourteenth Amendment Substantive Due Process Claims

The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch*, 494 U.S. 113, 125 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon*, 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*." *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question). *Id*.

"Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or ill-advised." *Lowrence v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) [internal quotations marks and citations omitted], *aff'g*, 91-CV-1196, Memorandum-Decision and Order (N.D.N.Y. filed Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

"An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Whitaker v. Super*, 08-CV-0449, 2009 WL 5033939, at *5 (N.D.N.Y. Dec. 14, 2009) (Kahn, J. adopting Report-Recommendation by Lowe, M.J.) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 [1995]). Regarding the first prong of this test, "[i]t is undisputed . . . that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004). When evaluating whether an inmate's confinement in SHU violates his substantive due process rights, the issue, then, is whether his keeplock confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* at 64.

"In the Second Circuit, determining whether a disciplinary confinement constituted an 'atypical and significant hardship' requires examining 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement.'" *Whitaker*, 2009 WL 5033939, at *5 (quoting *Palmer*, 364 F.3d at 64). "Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an 'atypical and significant hardship' only if 'the conditions were more severe than the normal SHU conditions.'" *Id.* (quoting *Palmer*, 364 F.3d at 65).[5]

---

[5]     Generally, "'[n]ormal' SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Whitaker*, 2009 WL 5033939, at *5 n.27 (citing *Ortiz v. McBride*, 380 F.3d 649, 655 [2d Cir. 2004]).

### 4.      Qualified Immunity Defenses

The qualified immunity defense is available to only those government officials performing

discretionary functions, as opposed to ministerial functions. *Kaminsky v. Rosenblum*, 929 F.2d

922, 925 (2d Cir. 1991).  "Once qualified immunity is pleaded, plaintiff's complaint will be

dismissed unless defendant's alleged conduct, when committed, violated 'clearly established

statutory or constitutional rights of which a reasonable person would have known.'"  *Williams v.*

*Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815

[1982]).  As a result, a qualified immunity inquiry in a civil rights case generally involves two

issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a

constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir.

2004), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable
> specificity'; (2) whether the decisional law of the Supreme Court and
> the applicable circuit court support the existence of the right in
> question; and (3) whether under preexisting law a reasonable defendant
> official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991), *cert. denied*, 503 U.S. 962 (1992).[6]  "As the

third part of the test provides, even where the law is 'clearly established' and the scope of an

official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an

---

[6]      *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179
F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v.*
*Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d
470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v.*
*New York State Div. of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

official if it was 'objectively reasonable' for him at the time of the challenged action to believe his

acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007).[7]  This "objective

reasonableness" part of the test is met if "officers of reasonable competence could disagree on

[the legality of defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[8]  As the

Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[9]

## III.   ANALYSIS

### A.   Plaintiff's Retaliation Claim Under the First Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

this claim because Plaintiff has failed to adduce admissible record evidence from which a rational

factfinder could conclude that he (1) engaged in protected activity, or (2) suffered adverse action

---

[7]      *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'"); *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[8]      *See also Malsh v. Corr. Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[9]      *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks omitted].

as a result of engaging in protected activity.  More specifically, Defendants argue that the claim

should be dismissed because (1) the statement of an inmate's intent to contact an attorney is not

protected conduct, (2) Plaintiff has failed to adduce admissible record evidence from which a

rational factfinder could conclude that Defendant Norton knew of Plaintiff's intention to contact

an attorney, and (3) Plaintiff has failed to adduce admissible record evidence from which a

rational factfinder could conclude that Defendants' actions were retaliatory.  (Dkt. No. 24, Attach.

10.)[10]

       After carefully considering the admissible record evidence adduced in this case, and

carefully reviewing the relevant case law, the Court has trouble finding that an inmate's one-time

making of an oral statement (immediately after the use of force against him) that he would be

"contacting [his] attorney," or "calling a lawyer" at some unidentified point in the future

constitutes engagement in activity that is protected by the First Amendment–especially where, as

here, the inmate did not reference the prison grievance process in his statement.

       Representation by a lawyer is certainly not necessary to file an inmate grievance in the

New York State Department of Corrections and Community Supervision, nor does such

representation necessarily result in the filing of a grievance.  Rather, such representation is most

typically associated with the filing of a civil rights action in federal court (as is clear from the

motions for appointment of counsel typically filed in federal court actions).  As a result, the

---

[10]     Defendants also argue that Plaintiff's First Amendment claim should be dismissed
to the extent that it is based solely on the fact that misbehavior reports against him were *false* (as
opposed to being false *and retaliatory*).  The Court agrees that Plaintiff has no general
constitutional right to be free from false misbehavior reports.  *See Boddie v. Schneider*, 105 F.3d
857, 862 (2d Cir. 1997).  As a result, to the extent that the Plaintiff's Complaint may be
construed as asserting a claim based solely on the issuance of false behavior reports, that claim is
dismissed.

statement in question does not reasonably imply that Plaintiff would be filing a grievance as much as it implies that he was going to consult an attorney as to whether or not to file a civil rights action in federal court.

Here, such a statement is problematic.  This is because, generally, the filing of the prisoner civil rights action in federal court in New York State must be preceded by the prisoner's exhaustion of his available administrative remedies (or his acquisition of a valid excuse for failing to exhaust those remedies).  Any filing without such prior exhaustion (or acquisition of a valid excuse), under the circumstances, would be so wholly without merit as to be frivolous.  Of course, filing a court action that is frivolous is not constitutionally protected activity.[11]

Moreover, to the extent that Plaintiff's statement could be construed as reasonably implying that he was going to consult an attorney as to whether or not to file a grievance, the Court has trouble finding that such a vague statement is constitutionally protected.[12]  As one

---

[11]    *See Wade-Bey v. Fluery,* 07-CV-117, 2008 WL 2714450 at *6 (W.D. Mich. July 8, 2010) ("Although it is well established that prisoners have a constitutional right of access to the courts . . . , the filing of a frivolous lawsuit would not be protected activity.") [citation omitted].

[12]    The Court notes that numerous cases exist for the point of law that even *expressly threatening* to file a *grievance* does not constitutes protected activity.  *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 554-55 (7th Cir. 2009) ("[I]t seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") [emphasis in original]; *Brown v. Darnold*, 09-CV-0240, 2011 WL 4336724, at *4 (S.D. Ill. Sept. 14, 2011) ("Plaintiff cannot establish that his threat to file a grievance against Defendant Darnold is a constitutionally protected activity."); *Koster v. Jelinek*, 10-CV-3003, 2011 WL 3349831, at *3, n.2 (C.D. Ill. Aug. 3, 2011) ("The plaintiff does not seem to be asserting that he had a First Amendment right to threaten the facilitators with lawsuits and grievances, nor does the Court believe that he has such a right."); *Ingram v. SCI Camp Hill*, 08-CV-0023, 2010 WL 4973302, at *15 (M.D. Pa. Dec. 1, 2010) ("Stating an intention to file a grievance is not a constitutionally protected activity."), *aff'd*, No. 11-1025, 2011 WL 4907821 (3d Cir. Oct. 17, 2011); *Lamon v. Junious*, 09-CV-0484, 2009 WL 3248173, at *3 (E.D. Cal. Oct. 8, 2009) ("A mere threat to file suit does not rise to the level of a protected activity. . . ."); *Miller v. Blanchard*, 04-CV-0235, 2004 WL 1354368, at *6 (W.D. Wis. June 14, 2004) ("Plaintiff alleges that defendants retaliated against him after he threatened to file a lawsuit against them.  Inmates do not have a First Amendment right to make threats.").

14

district court has stated, "[h]oping to engage in constitutionally protected activity is not itself constitutionally protected activity."[13]  The Court notes that a contrary rule would enable a prisoner who has committed conduct giving rise to a misbehavior report to create a genuine issue of material fact (and thus reach a jury) on a retaliation claim (alleging adverse action based on the issuance of that misbehavior report) simply by uttering the words, "I'm calling a lawyer," after he commits the conduct in question but before the misbehavior report is issued.

In any event, even assuming, for the sake of argument, that Plaintiff's statement was constitutionally protected, the Court finds, based on the current record, that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that his statement to Defendants Dinelle, Duckett, and Broekema that he would be contacting an attorney was a substantial or motivating factor for the issuance of the misbehavior report by Defendant Norton (which was signed by Defendant Dinelle as a witness), and the misbehavior report by Defendant Duckett (which was signed by Defendant DeLuca as a witness).  The Court makes this finding for two alternate reasons.

First, with regard to the misbehavior report issued by Defendant Norton, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that she was aware Plaintiff would be contacting an attorney.  In addition, with regard to the report made by Defendant Duckett (which was signed by Defendant DeLuca as a witness), although there is record evidence that Defendant Duckett had knowledge of Plaintiff's statement that he would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett had reason to believe, at the time the

---

[13]     *McKinnie v. Heisz*, 09-CV-0188, 2009 WL 1455489, at *11 (W.D. Wis. May 7, 2009) ("Hoping to engage in constitutionally protected activity is not itself constitutionally protected activity. At most, petitioner's actions could be construed as a 'threat' to assert his rights but that is not enough.").

misbehavior report was issued, Plaintiff would actually follow through with his one-time oral statement, made on the heals of a heated incident.

Second, even assuming that Defendant Duckett or Defendant Norton had reason to believe Plaintiff would contact an attorney, Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant Duckett or Defendant Norton would not have issued the misbehavior report anyway, based on Plaintiff's actions. Indeed, at Plaintiff's disciplinary hearings, evidence was adduced that he in fact committed most of the misconduct alleged in the misbehavior reports, which resulted in the hearing officer finding multiple violations and sentencing Plaintiff to SHU.[14] Furthermore, those convictions were never subsequently reversed on administrative appeal.[15] As a result, no admissible record evidence

---

[14]    *See Hynes v. Squillance*, 143 F.3d 653, 657 (2d Cir. 1998) (holding that defendants met their burden of showing that they would have taken disciplinary action on valid basis alone where the evidence demonstrated that plaintiff had committed "the most serious, if not all, of the prohibited conduct"); *Jermosen v. Coughlin*, 86-CV-0208, 2002 WL 73804, at *2 (N.D.N.Y. Jan. 11, 2002) (Munson, J.) (concluding, as a matter of law, that defendants showed by a preponderance of the evidence that they would have issued a misbehavior report against plaintiff even in the absence of his complaints against correctional department personnel, because they established that the misbehavior report resulted in a disciplinary conviction, "demonstrat[ing] that plaintiff in fact committed the prohibited conduct charged in the misbehavior report.").

[15]    For these reasons, the Court finds to be inapposite the case that Plaintiff cites for the proposition that the Court must accept as true his sworn denial that he committed any of the violations alleged in the misbehavior reports issued against him. *See Samuels v. Mockry*, 142 F.3d 134, 135-36 (2d Cir. 1998) (addressing a situation in which a prisoner was placed in a prison's "Limited Privileges Program," upon a finding rendered by the prison's Program Committee, that he had refused to accept a mandatory work assignment, "*without a hearing or a misbehavior report*") [emphasis added]. The Court would add only that, even if it were to accept Plaintiff's sworn denial as true, the Court would still find that he has failed to establish that Defendants Duckett and Norton would not have issued the misbehavior reports against him anyway, based on their subjective belief that he was acting in a disturbing, interfering, harassing and disobedient manner at the time in question (as evident from, *inter alia*, their misbehavior reports, the disciplinary hearing testimony of three of the Defendants, and admissions made by Plaintiff during his deposition regarding the "confusion" and "misunderstanding" that occurred during his examination by Defendant Norton, his persistent assertions about his prescribed frequency of visits, and his unsolicited comments about his proper course of treatment).

exists from which a rational factfinder could conclude that Plaintiff has established the third element of a retaliation claim–the existence of a causal connection between the protected speech and the adverse action.

For each of these alternative reasons, Plaintiff's retaliation claim under the First Amendment is dismissed.

### B.   Plaintiff's Claims Under the Eighth Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's Eighth Amendment claims because (1) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Norton used any force against Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so, (2) Plaintiff has failed to adduce any admissible evidence from which a rational factfinder could conclude that Defendant Broekema had a reasonable opportunity to intervene and prevent the alleged assault by Defendants Dinelle, DeLuca and Duckett, yet failed to do so, and (3) Plaintiff's identification of Defendant DeLuca is "very tentative."

As an initial matter, because Plaintiff did not oppose Defendants' argument that his excessive-force claim against Defendant Norton should be dismissed, Defendants' burden with regard to this claim "is lightened such that, in order to succeed, they need only show the facial merit of their request, which has appropriately been characterized as a 'modest' burden." *Xu-Shen Zhou v. S.U.N.Y. Inst. of Tech.*, 08-CV-0444, 2011 WL 4344025, at *11 (N.D.N.Y. Sept. 14, 2011) (Suddaby, J.).  After carefully considering the matter, the Court finds that Defendants have met this modest burden, for the reasons stated by them in their memoranda of law.  The Court would add only that, based on its own independent review of the record, the Court can find no record evidence to support the claim that Defendant Norton used force against

17

Plaintiff, or was in a position to intervene to prevent the use of force against Plaintiff, yet failed to do so.  As a result, Plaintiff's Eighth Amendment claim against Defendant Norton is dismissed.

Turning to Plaintiff's failure-to-intervene claim against Defendant Broekema, it is undisputed that it was Defendants Duckett, Dinelle and DeLuca who used force against Plaintiff. Plaintiff testified that, while Defendant Broekema was in the room at the time, Defendant Broekema was standing behind Defendant Dinelle on his "immediate right."  In addition, Plaintiff testified that Defendant Duckett's threat of physical force against Plaintiff was conditioned on Plaintiff's continued failure to comply with (what Plaintiff perceived to be) conflicting instructions by Defendants Duckett and Dinelle during the frisk.  (Dkt. No. 24, Attach. 4, at 97-99.)  Furthermore, Plaintiff testified that it was only after he failed to put his hands in his pockets (rather soon after being warned by Defendant Duckett) that either Defendant Duckett or Defendant Dinelle punched him *one time* with a "closed fist" in the side of his nose, causing him to immediately fall to the ground.  (*Id*. at 98-99.)  Finally, Plaintiff testified that the kicks that he suffered soon after falling to the ground were limited in nature, having occurred only "a couple of times," and indeed having only *possibly* occurred.  (*Id*. at 99.)

While the Court in no way condones the conduct alleged in this action, the Court is simply unable to find, based on the current record, that Plaintiff has adduced sufficient admissible record evidence to reach a jury on his Eighth Amendment claim against Defendant Broekema.  Rather, based on the evidence presented, a rational factfinder could only conclude that the use of force was simply too uncertain for a reasonable person in Defendant Broekema's position to expect; and it was too brief in nature to give Defendant Broekema a realistic opportunity to intervene in

it, so as prevent the one punch and possibly few kicks that Plaintiff presumably experienced.[16]

Finally, based on the current record, the Court rejects Defendants' third argument (i.e., that Plaintiff's excessive-force claim against Defendant DeLuca should be dismissed because Plaintiff's identification of Defendant DeLuca is "very tentative"). Defendants argue that Plaintiff has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendant DeLuca was present during the use of force against Plaintiff (let alone that Defendant DeLuca used force against Plaintiff). This is because Plaintiff's basis for bringing his excessive-force claim against Defendant DeLuca is that he remembered being assaulted by three individuals, including Defendants Dinelle and Duckett, whose last names began with the letter "D." While this fact is undisputed, it is also undisputed that Defendant DeLuca was interviewed by the Inspector General's Office regarding his involvement in the incidents giving rise to Plaintiff's claims,[17] and that both Defendant Broekema's use-of-force report, and Defendant Broekema's Facility Memorandum, state that Defendant DeLuca participated in the

---

[16]       *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (noting that "three blows [that occurred] in such rapid succession . . . [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); *Blake v. Base*, 90-CV-0008, 1998 WL 642621, at *13 (N.D.N.Y. Sept. 14, 1998) (McCurn, J.) (dismissing failure-to-intervene claim against police officer based on finding that the punch to the face and few body blows that plaintiff allegedly suffered "transpired so quickly . . . that even if defendant . . . should have intervened, he simply did not have enough time to prevent plaintiff from being struck"); *Parker v. Fogg*, 85-CV-0177, 1994 WL 49696, at *8 (N.D.N.Y. Feb. 17, 1994) (McCurn, J.) (holding that an officer is not liable for failure-to-intervene if there "was no 'realistic opportunity' to prevent [an] attack [that ends] in a matter of seconds"); *see also Murray-Ruhl v. Passinault,* 246 F. App'x 338, 347 (6th Cir. 2007) (holding that there was no reasonable opportunity for an officer to intervene when one officer stood by while another fired twelve shots in rapid succession); *Ontha v. Rutherford Cnty., Tennessee,* 222 F. App'x 498, 506 (6th Cir. 2007) ("[C]ourts have been unwilling to impose a duty to intervene where. . . an entire incident unfolds 'in a matter of seconds.'"); *Miller v. Smith*, 220 F.3d 491, 295 (7th Cir. 2000) (noting that a prisoner may only recover for a correction's officer's failure to intervene when that officer "ignored a realistic opportunity to intervene").

[17]       (Dkt. No. 27, Attach. 2, at 19-20.)

use of force against Plaintiff.[18]   Based on this evidence, a rational factfinder could conclude that

Defendant DeLuca violated Plaintiff's Eighth Amendment rights.   As a result, Plaintiff's Eighth

Amendment excessive-force claim against Defendant DeLuca survives Defendants' motion for

summary judgment.   The Court would add only that, although it does not construe Plaintiff's

Complaint as alleging that Defendant DeLuca failed to intervene in the use of force against

Plaintiff, assuming, (based on Plaintiff's motion papers) that Plaintiff has sufficiently alleged this

claim, the claim is dismissed because the entirety of the record evidence as it pertains to

Defendant DeLuca establishes that he used force against Plaintiff.

### C.   Plaintiff's Claim Under the Fourteenth Amendment

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of

this claim because Defendants did not deprive Plaintiff of his liberty rights.   As stated above in

note 2 of this Decision and Order, Plaintiff failed to address Defendants' argument that his

substantive due process claim should be dismissed.   As a result, as stated above in Part III.B. of

this Decision and Order, Defendants' burden with regard to this claim "is lightened such that, in

order to succeed, they need only show the facial merit of their request, which has appropriately

been characterized as a 'modest' burden."   *Xu-Shen Zhou*, 2011 WL 4344025, at *11.

After carefully considering the matter, the Court finds that Defendants have met this

modest burden, for the reasons stated by them in their memoranda of law.   The Court would add

only that, based on its own independent review of the record, although the record evidence

establishes that Plaintiff was confined in SHU for 150 days as a result of the misbehavior reports

issued by Defendants Norton and Duckett, Plaintiff has failed to adduced admissible record

evidence from which a rational factfinder could conclude that the conditions of his confinement

---

[18]        (Dkt. No. 27, Attach. 2, at 10, 14.)

during this 150-day period were more severe than normal SHU conditions.[19]  As a result,

Plaintiff's substantive due process claim is dismissed.

###    D.    Defendants' Defense of Qualified Immunity

As stated above in Part I.C. of this Decision and Order, Defendants seek dismissal of

Plaintiff's claims on the alternative ground that they are protected from liability, as a matter of

law, by the doctrine of qualified immunity, under the circumstances.

###       1.    Retaliation

The doctrine of qualified immunity "protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223,

231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982]).  Here, even assuming that

Plaintiff's statement that he would contact an attorney regarding the use of force he experienced

constitutes engagement in protected activity, and even also assuming that the only reason

Defendant Norton and/or Duckett issued Plaintiff a misbehavior report was because he made this

---

[19]        *See Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.
17, 1998) (McCurn, J.) (finding that 180 days that plaintiff spent in SHU, where he was
subjected to numerous conditions of confinement that were more restrictive than those in general
population, did not constitute atypical and significant hardship in relation to ordinary incidents
of prison life); *accord, Husbands v. McClellan*, 990 F. Supp. 214, 217-19 (W.D.N.Y. 1998) (180
days in SHU under numerous conditions of confinement that were more restrictive than those in
general population); *Warren v. Irvin*, 985 F. Supp. 350, 353-56 (W.D.N.Y. 1997) (161 days in
SHU under numerous conditions of confinement that were more restrictive than those in general
population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997) (192 days
in SHU under numerous conditions of confinement that were more restrictive than those in
general population); *Horne v. Coughlin*, 949 F. Supp. 112, 116-17 (N.D.N.Y. 1996) (Smith,
M.J.) (180 days in SHU under numerous conditions of confinement that were more restrictive
than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5
(S.D.N.Y. Aug. 27, 1996) (210 days in SHU under numerous conditions of confinement that
were more restrictive than those in general population); *Carter v. Carriero*, 905 F. Supp. 99,
103-04 (W.D.N.Y. 1995) (270 days in SHU under numerous conditions of confinement that were
more restrictive than those in general population).

statement, these Defendants are, under the circumstances, entitled to qualified immunity.  This is because the Court finds that the right to make this statement (without experiencing any resulting adverse action) was not a clearly established during the time in question (January 2009), based on a review of the relevant case law.  *See*, *supra*, notes 12 and 13 of this Decision and Order.

As a result, Plaintiff's retaliation claim is dismissed on the alternate ground of qualified immunity.

### 2.      Excessive Force

There is no doubt that the right to be free from the use of excessive force was "clearly established" at the time of the incidents giving rise to Plaintiff's claims.  *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  Moreover, with regard to whether it was objectively reasonable for Defendants to use the alleged amount of force that they used, the Second Circuit has made clear that, "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity."  *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) [internal quotation marks omitted].

Here, after carefully reviewing the record, and construing it in the light most favorable to Plaintiff, the Court finds that, even if Defendants Dinelle, DeLuca and Duckett genuinely feared being assaulted by Plaintiff, and even if those three Defendants genuinely perceived Plaintiff's words and movements to constitute an attempt to resist a frisk, admissible record evidence exists from which a rational jury could conclude that those perceptions were not objectively reasonable under the circumstances.  As the Second Circuit has observed, it is impossible to "determine whether [Defendants] reasonably believed that [their] force was not excessive when several material facts [are] still in dispute, [and therefore,] summary judgment on the basis of qualified

immunity [is] precluded." *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999).[20]  For these reasons, the Court rejects Defendants' argument that Plaintiff's excessive-force claim should be dismissed on the ground of qualified immunity as it relates to Defendants Dinelle, DeLuca and Duckett.

However, the Court reaches a different conclusion with regard to Plaintiff's failure-to-intervene claim against Defendant Broekema: the Court finds that, at the very least, officers of reasonable competence could disagree on the legality of Defendant Broekema's actions, based on the current record.  As a result, Plaintiff's failure-to-intervene claim against Defendant Broekema is dismissed on this alternative ground.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 24) is **GRANTED in part and DENIED in part** in the following respects:

(1) Defendants' motion for summary judgment on Plaintiff's First Amendment claim is **GRANTED**;

(2) Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim is **GRANTED**;

(3) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton is **GRANTED**;

(4) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema is **GRANTED**; and

---

[20]     *See also Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("[T]he parties have provided conflicting accounts as to [who] initiated the use of force, how much force was used by each, and whether [the arrestee] was reaching toward [a weapon]. Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [should not be] decided by the district court on summary judgment.").

(5) Defendants' motion for summary judgment on Plaintiff's Eighth Amendment excessive-force claim against Defendant DeLuca is **DENIED**; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** from this action:

(1)  Plaintiff's First Amendment claim;

(2) Plaintiff's Fourteenth Amendment substantive due process claim;

(3) Plaintiff's Eighth Amendment excessive-force claim against Defendant Norton; and

(4) Plaintiff's Eighth Amendment failure-to-intervene claim against Defendant Broekema; and it is further

**ORDERED** that Defendants Norton and Broekema are **DISMISSED** from this action; and it is further

**ORDERED** that, following this Decision and Order, the following claims remain pending in this action: Plaintiff's Eighth Amendment excessive-force claim against Defendants DeLuca, Dinnelle and Duckett; and it is further

**ORDERED** that counsel are directed to appear on **JANUARY 4, 2012 at 2:00 p.m.** in chambers in Syracuse, NY for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 16, 2011**, and the parties are directed to engage in meaningful settlement negotiations prior to the 1/4/12 conference.

Dated: November 29, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

24