UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JONATHAN HENRY,

                    Plaintiff,

                                                          9:10-CV-0456
v.                                                        (GTS/DEP)

JAMES F. DINELLE, Corr. Officer;
RUSSELL E. DUCKETT, Corr. Officer;
and ALFRED J. DELUCA, Corr. Officer,

                    Defendants.
_____

APPEARANCES:                                             OF COUNSEL:

SIVIN & MILLER, LLP                                      EDWARD SIVIN, ESQ.
   Counsel for Plaintiff                                 GLENN D. MILLER, ESQ.
20 Vesey Street, Suite 1400
New York, New York 10007


HON. ERIC T. SCHNEIDERMAN                                TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York               Assistant Attorney General
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this prisoner civil rights action filed by Jonathan Henry

("Plaintiff") against the three above-captioned employees of the New York State Department of

Corrections and Community Supervision ("Defendants"), is Plaintiff's motion for judgment

notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b), or for a new trial pursuant to Fed.

R. Civ. P. 59(a).  (Dkt. No. 72.) For the reasons set forth below, Plaintiff's motion is denied.

# I.    RELEVANT BACKGROUND

Because the parties have, in their memoranda of law, demonstrated an accurate understanding of this case's relevant procedural history, including the trial that occurred in this case, the Court will not recite that history in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will proceed directly to a description of the parties' briefing on Plaintiff's motion.

## A.    Plaintiff's Motion

Generally, Plaintiff's current motion seeks two alternative forms of relief. (*See generally* Dkt. No. 72.) As a threshold matter, Plaintiff seeks a judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b), on the ground that the jury's responses to Questions 1 and 3 of the Court's Special Verdict Form were irreconcilably inconsistent. (*Id*.) More specifically, Plaintiff argues that the jury's determination (in response to Question 1) that Defendants Dinelle and Duckett used force against him "maliciously and sadistically for the purposes of causing harm to him, and not in a good-faith effort to maintain or restore discipline" is irreconcilably inconsistent with the jury's subsequent determination (in response to Question 3) that a reasonable corrections officer could have believed that those defendants' actions "did not violate the Plaintiff's federal constitutional or statutory rights." (*Id*.)

In the alternative, Plaintiff seeks a new trial pursuant to Fed. R. Civ. P. 59(a), based on one or both of two related grounds: (1) the same "irreconcilable inconsistency" described above; and/or (2) the fact that Question 3 of the Special Verdict Form misstated the law on qualified immunity by improperly permitting those Defendants Dinelle and Duckett to escape liability where they knew that their actions violated Plaintiff's rights. (*Id*.)

## B.    Defendants' Response

Generally, in response to Plaintiff's request for judgment notwithstanding the verdict, Defendants Dinelle and Duckett argue that Plaintiff is not entitled to such a judgment for two alternative reasons.  (*See generally* Dkt. No. 74.)  First, argue Defendants Dinelle and Duckett, Plaintiff is barred from requesting a judgment notwithstanding the verdict under Fed. R. Civ. P. 50(b), because he failed to move for a judgment as a matter of law under Fed. R. Civ. P. 50(a) at the close of his proof and at the close of Defendants' proof.  (*Id.*)  Second, argue Defendants Dinelle and Duckett, in any event, judgment notwithstanding the verdict cannot be granted because the evidence, when viewed in favor of Defendants Dinelle and Duckett, is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there is only one conclusion as to the verdict that reasonable jurors could have reached regarding qualified immunity.  (*Id.*)

Generally, in response to Plaintiff's alternative request for a new trial, Defendants Dinelle and Duckett argue that Plaintiff is not entitled to a new trial for two alternative reasons. (*Id.*)  First, argue Defendants Dinelle and Duckett, for a new trial to be granted, the movant must demonstrate that the jury's verdict was seriously erroneous or a miscarriage of justice, which Plaintiff has not done here because (a) the jury's verdict can be reconciled as a referendum on the Department of Corrections and Community Supervision's policy on inmate control and not on Defendants Dinelle's and Duckett's conduct of following that policy, and (b) Question 3 of the Special Verdict Form correctly stated the law on qualified immunity by precluding from consideration Defendants Dinelle's and Duckett's subjective states of mind.  (*Id.*)  Second, argue Defendants Dinelle and Duckett, in any event, because Plaintiff failed to preserve the issue of an

erroneous charge as required by Fed. R. Civ. P. 51, any review of the jury charge is limited to review for only fundamental error, which does not exist here, because the jury's verdict was not egregious, did not constitute a miscarriage of justice, and is not irreconcilably inconsistent. (*Id.*)

### C.    Plaintiff's Reply

Generally, in reply to Defendants Dinelle's and Duckett's response, Plaintiff argues that he is entitled to a judgment notwithstanding the verdict for two reasons. (Dkt. No. 76.) First, argues Plaintiff, even where no Fed. R. Civ. P. 50(a) motion was made, the Court may grant judgment as a matter of law where, as here, doing so is necessary to prevent manifest injustice. (*Id.*) Second, argues Plaintiff, Defendants misinterpret the nature of Plaintiffs motion as arguing that the evidence was such that the jury properly could have returned a verdict only in his favor; Plaintiff acknowledges that there were sharply contested issues of fact, and that it could not be said that the evidence was such that plaintiff was entitled to a judgment as a matter of law based on the evidence adduced at trial; rather, Plaintiff is arguing manifest injustice because the jury's first finding compelled a judgment in favor of Plaintiff. (*Id.*)

In addition, Plaintiff repeats his previously asserted argument that, in the alternative, he is entitled to a new trial due to the "irreconcilable inconsistency" that exists between the jury's responses to Questions 1 and 3 of the Special Verdict Form. (*Id.*)

## II.    GOVERNING LEGAL STANDARDS

Generally, the parties have, in their memoranda of law, demonstrated an accurate understanding of legal standards governing Plaintiff's motion. As a result, the Court will describe only the relevant points of law contained in those legal standards.

**A.      Legal Standard Governing Motions for Judgment Notwithstanding the Verdict Pursuant to Fed. R. Civ. P. 50(b)**

Rule 50(b) of the Federal Rules of Civil Procedure provides as follows, in pertinent part:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment–or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged–the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b) (emphasis added).

As a result, a prerequisite for a motion for a post-trial motion for a judgment as a matter of law (also known as a motion for judgment notwithstanding the verdict) is a motion for judgment as a matter of law.  *See* Fed. R. Civ. P. 50 Advisory Committee Note (1963) ("A motion for judgment notwithstanding the verdict will not lie unless it was *preceded* by a motion for a judgment as a matter of law made at the close of all the evidence.") (emphasis added); Fed. R. Civ. P. 50 Advisory Committee Note (1991) ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486, n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

Granted, such a motion may be granted by a district court where doing so is necessary to prevent "manifest injustice." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998) ("As to any issue on which proper Rule 50 motions were not made, [a judgment as a matter of law] may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice."); *accord*,

*Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012); *Cordius Trust v. Kummerfeld,* 331 F. App'x 810, 811 (2d Cir. 2009).

However, "manifest justice" exists only when a jury's verdict is "wholly without legal support." *Pahuta v. Massey-Ferguson, Inc.,* 170 F.3d 125, 129 (2d Cir. 1999) ("We may overlook such a default in order to 'prevent a manifest injustice' in cases where a jury's verdict is wholly without legal support.") (internal quotation marks omitted); *accord, U.S. S.E.C. v. Stamoulis*, 350 F. App'x 499, 500 (2d Cir. 2009); *Clergeau v. Local 1181, Amalgamated Transit Union, AFL-CIO*, 162 F. App'x 32, 34 (2d Cir. 2005); *Rothstein v. Carriere*, 373 F.3d 275, 291 (2nd Cir. 2004).

> **B.    Legal Standard Governing Motions for a New Trial Pursuant to Fed. R. Civ. P. 59(a)**

Rule 59(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may, on motion, grant a new trial on all or some of the issues–and to any party–. . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A).

The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998) (internal quotation marks omitted); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997). Examples of such a serious error or a miscarriage of justice include when "the verdict is against the weight of the evidence," or when "for the reasons stated the trial was not fair to the moving party." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983). However, "the court should only grant a motion for a new trial when the jury's verdict is

'egregious.'" *DLC Mgmt. Corp.*, 163 F.3d at 134 (internal quotation marks omitted); *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992), *cert. denied*, 510 U.S. 908 (1993).

Moreover, to the extent any such motion for a new trial is premised to an objection to a jury instruction or verdict form, Fed. R. Civ. P. 51 requires the movant to have raised that objection before the jury retires, in order to preserve the objection. *See Brenner v. World Boxing Council*, 675 F.2d 445, 456 (2d Cir.) ("Brenner asserts that he is entitled to a new trial on the group boycott claim because the trial court erred in instructing the jury that the burden was on him to prove by a fair preponderance of the evidence that the WBC had not satisfied all of the elements of the Denver Rockets test. Under Fed. R. Civ. P. 51, in order to raise a challenge to the jury instructions on appeal, a party must object to those instructions before the jury retires to consider its verdict. Since Brenner failed to object to the instructions below, absent plain error, he is precluded from raising this claim on appeal."), *cert. denied*, 459 U.S. 835 (1982).[1]

---

[1] *See also Snyder v. New York State Educ. Dept.,* 486 F. App'x 176, 177 (2d Cir. 2012) ("Upon review, we conclude that the district court did not abuse its discretion in denying the Appellants' motion [for a new trial pursuant to Fed. R. Civ. P. 59(a)] because, as discussed below, their claims challenging the district court's . . . jury instructions . . . are without merit. . . . Under Fed. R. Civ. P. 51(d)(1), a party may assign error based on an erroneous jury instruction "if that party properly objected.") (internal citation and quotation marks omitted); *Yore v. M/V LNG LEO,* 210 F.3d 356, at *1 (2d Cir. 2000) ("[In his motion for a new trial] Yore failed to preserve his challenges to the jury instructions on the Jones Act and unseaworthiness issues he raises on appeal [pursuant to Fed. R. Civ. P. 51]."); *De Campoamor v. Horodecki,* 122 F.3d 1055, at *2 (2d Cir. 1997) ("Because De Campoamor failed to object to the court's instruction at trial and fails to allege facts that support a finding that the jury instruction constituted "plain error" [in his motion for a new trial], his claim must fail."); *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 79 (2d Cir. 1995) ("The jurors were not given an explicit instruction that Hall's testimony was relevant only for purposes of interpreting the contract and could not be used to substitute general custom and practice for the contract. Scor asserts that the lack of any such instruction calls for a new trial. . . . We disagree. . . . Scor was obliged by Fed. R. Civ. P. 51 to raise any objection to jury instructions . . . . Rule 51 requires that any claim of error regarding jury instruction [forming the ground for a new trial pursuant to Rule 59] must be preserved by 'stating distinctly the matter objected to.'").

Rule 51 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). Rule 51 further provides, in pertinent part, that "[a]n objection is timely if . . . a party objects at the opportunity provided under Rule 51(b)(2); or . . . a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused." Fed. R. Civ. P. 51(c)(2). Finally, Fed. R. Civ. P. 51 provides, in pertinent part, that "[a] court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).

As a result, "[t]o establish plain error, [a movant] must show there was (1) error (2) that is plain and (3) that affects substantial rights." *U.S. v. Cossey*, 632 F.3d 82, 86-87 (2d Cir. 2011). Moreover, the Second Circuit "engages in a fourth consideration: whether or not to exercise its discretion to correct the error." *U.S. v. Doe*, 297 F.3d 76, 82 (2d Cir. 2002). Pursuant to this fourth consideration, the error should be corrected only if it "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *Doe*, 287 F.3d at 82, *Cossey*, 632 F.3d at 87. This fourth consideration has appropriately been characterized as a "more stringent" requirement for review of a forfeited error. *Cash v. Cnty. of Erie*, 654 F.3d 324, 341, n.8 (2d Cir. 2011).

The Court pauses to note that the Second Circuit has, on at least one occasion, identified an apparent inconsistency in its decisions as to whether, following the amendment of Fed. R. Civ. P. 51 in December of 2003, the appropriate standard of review of an unpreserved error is a

clear-error standard or a fundamental-error standard (i.e., one requiring that the error is serious and flagrant that it goes to the very integrity of the trial). *See Snyder v. New York State Educ. Dept.*, 486 F. App'x 176, 178, n.2 (2d Cir. 2012) (acknowledging apparent inconsistency).[2] After carefully considering the matter, the Court respectfully finds that the fundamental-error standard has indeed survived the amendment of Fed. R. Civ. P. 51 for the following three reasons: (1) the revised Fed. R. Civ. P. 51(d)(2) says only that a court "may" consider such a plain error, not that it "must" consider such a plain error, leaving open the possibility that a circuit court may, in its discretion, establish an additional, fundamental-error requirement for consideration of such an error; (2) since December of 2003, it appears that the Second Circuit has expressly used, in reviewing unpreserved errors, a fundamental-error standard twice as many times as it has expressly used only a clear-error standard;[3] and (3) indeed, in the very same

---

[2]     *See Shade v. Hous. Auth. of New Haven*, 251 F.3d 307, 313 (2d Cir. 2001) ("An error is fundamental under this standard only if it is 'so serious and flagrant that it goes to the very integrity of the trial.") (internal quotation marks omitted).

[3]     *Compare Stillman v. InService Am., Inc.*, 455 F. App'x 48, 50-51 (2d Cir. 2012) (applying fundamental-error standard to unpreserved jury instruction arguments) *and Cash v. Cnty. of Erie*, 654 F.3d 324, 341 n. 8 (2d Cir. 2011) (same) *and Goetz v. Hershman*, 423 F. App'x 3, 4 (2d Cir. 2011) (same) *and Farrar v. Town v. Stratford*, 391 F. App'x 47, 48 (2d Cir. 2010) (same) *and S.E.C. v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009) (same) (internal quotation marks omitted) *and Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 142 (2d Cir. 2007) (same) *and Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 152 (2d Cir. 2006) (same), *vacated on other grounds* 544 U.S. 84 (2008), *and Kerman v. City of New York,* 374 F.3d 93, 128 (2d Cir. 2004) (same) *and Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148, 155 (2d Cir. 2004) (same) *and SCS Commc'ns, Inc. v. Herrick*, 360 F.3d 329, 343 (2d Cir. 2004) (same) *with Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 152-53 (2d Cir. 2010) (using plain-error standard for unpreserved jury instruction argument) *and Tirreno v. Mott*, 375 F. App'x 140, 141 (2d Cir. 2010) (same) *and Edwards v. Tarascio*, 369 F. App'x 182, 184 (2d Cir. 2010) (same) *and Diaz v. MTA New York City Transit Authority*, No. 06-4862, 2007 WL 4103682, at *1 (2d Cir. Nov. 19, 2007) (same) *and Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 785 (2d Cir. 2005) (same).

decision in which it identifies the apparent inconsistency, the Second Circuit cites the point of law that the Second Circuit may require that the unpreserved error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings (which is a standard that is functionally similar to the fundamental-error standard), *see Snyder*, 486 F. App'x at 178, n.2.

### C. Legal Standard Governing Claims of Excessive Force Under the Eighth Amendment

Generally, to find that excessive force was used in violation of the Eighth Amendment, a plaintiff must prove by the preponderance of the evidence, that force was used against the plaintiff, and that such force was used maliciously and sadistically to cause harm, and not in a good-faith effort to maintain or restore discipline.[4]

Some of the things a jury may consider in determining whether force was used against the plaintiff maliciously and sadistically to cause him harm (and not in a good-faith effort to maintain or restore discipline) include the following: (1) the need for the use of force; (2) the relationship between the need for force and the amount of force used; (3) the threat reasonably perceived by responsible corrections officers; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the plaintiff.[5]

Corrections officers are given the lawful authority to use such physical force as may be reasonably necessary to enforce compliance with proper instructions and to protect themselves from physical harm from an inmate. However, when corrections officers maliciously and sadistically use force to cause harm to a prisoner, and the prisoner suffers at least some injury,

---

[4]     *See, infra,* Part III.B. of this Decision and Order.

[5]     O'Malley, Grenig & Lee, 3B *Fed. Jury Prac. & Instr.* § 166.23 (5th ed. 2012).

the result is cruel and unusual punishment under the Eighth Amendment, regardless of the seriousness or significance of the injury to the prisoner.[6]

### D.    Legal Standard Governing Affirmative Defense of Qualified Immunity

Generally, a qualified immunity inquiry in a civil rights case involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[7]  "As the third part of the test provides, even where the law is 'clearly established'

---

[6]        *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

[7]        *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Div. of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70

(2d Cir. 2007) [citations omitted].[8]  This "objective reasonableness" part of the test is met if

"officers of reasonable competence could disagree on [the legality of defendant's actions]."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).[9]  As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it
> is obvious that no reasonably competent officer would have
> concluded that a warrant should issue; but if officers of
> reasonable competence could disagree on this issue, immunity
> should be recognized.

*Malley*, 475 U.S. at 341.[10]

In deciding whether a reasonable corrections officer in a defendant's situation would

have known that his or her conduct violated a federal right, a jury may consider the following:

(1) the nature of the defendant's official duties; (2) the character of his official position; (3) the

---

[8]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis
v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages
unless it is further demonstrated that their conduct was unreasonable under the applicable
standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

[9]     *See also Malsh v. Corr. Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995)
[citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[10]     *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity
standard gives ample room for mistaken judgments by protecting all but the plainly incompetent
or those who knowingly violate the law.") [internal quotation marks and citation omitted].

information that was known, or not known to him; and (4) the events that confronted him.[11] However, a jury should *not* consider what the defendant's subjective state of mind was–regardless of whether that defendant was acting in good faith, or was actually intending to harm the plaintiff.[12]

## III.    ANALYSIS

### A.    Plaintiff's Request for a Judgment Notwithstanding the Verdict

After carefully considering the matter, the Court denies Plaintiff's request for a judgment notwithstanding the verdict for the reasons stated in Defendants' opposition memorandum of law.  (*See generally* Dkt. No. 74.)  *See also, supra,* Part I.B. of this Decision and Order (summarizing those arguments).  The Court would only add the following analysis.

At no point in this action did Plaintiff file a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).  As a result, the success of Plaintiff's current motion depends on whether he has shown that granting the motion is necessary to prevent "manifest injustice." *See, supra,* Part II.A. of this Decision and Order (summarizing the relevant legal standard).  To make such a showing, Plaintiff must show that the jury's verdict is "wholly without legal support."  *Id.*  He has not done so.  Rather, at the very least, sufficient record evidence exists–specifically, Defendants' versions of their use of force–from which a rational jury could have found that a reasonable corrections officer could have believed that Defendants Dinell's

---

[11]        *See, e.g., Bradley v. Jusino,* 04-CV-8411, 2008 WL 417753, at *2 (S.D.N.Y. Feb. 14, 2008); *Wright v. Wilburn*, 194 F.R.D. 54, 61-62 (N.D.N.Y. 2000) (McAvoy, J.); *Alvarez v. Abreau*, 54 F. Supp.2d 335, 341 (S.D.N.Y. 1999); *James v. Tilghman*, 194 F.R.D. 408, 430 (D. Conn. 1999).

[12]        *See, infra,* Part III.B. of this Decision and Order.

and Duckett's actions "did not violate the Plaintiff's federal constitutional or statutory rights." Any argument that sufficient evidence does not exist because the Court should credit response to Question 1 over response Question 3 is circular and unavailing.[13] Indeed, because the error that Plaintiff asserts "related to the jury instructions and verdict sheet, and not to the jury's general verdicts . . . , [Plaintiff's] objection needed to conform to the strictures of Fed. R. Civ. P. 51." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 55 (2d Cir. 2002).

For all of these reasons, the Court denies Plaintiff's request for a judgment notwithstanding the verdict.

### B.      Plaintiff's Request for a New Trial

After carefully considering the matter, the Court denies Plaintiff's alternative request for a new trial for the reasons stated in Defendants' opposition memorandum of law.  (*See generally* Dkt. No. 74.)  *See also, supra,* Part I.B. of this Decision and Order (summarizing those arguments).  The Court would only add the following analysis.

Following Court's review of Plaintiff's Proposed Verdict Form (Dkt. No. 44) and the Government's Proposed Verdict Form (Dkt. No. 47, at 32-33), the Court proposed a Special Verdict Form (Dkt. No. 68).  Neither during nor after the charge conference did Plaintiff "stat[e] distinctly" the now-asserted inconsistency between using Question 3 and Question 1 on the Court's Special Verdict Form, and "stat[e] . . . the grounds for [that] objection," as required by

---

[13]      *See Frazier v. Boyle*, 206 F.R.D. 480, 492-93 (E.D. Wis. 2002) ("Essentially, Boyle's argument is that he is entitled to relief because the jury's answer to verdict question 1(c) was inconsistent with its award of damages. But, Rule 50 does not provide a remedy for an inconsistent verdict. There is no priority among answers to verdict questions. I cannot treat one answer as the jury's 'true' disposition to which other answers must be conformed. . . .  Rather, if answers to verdict questions are truly inconsistent, the proper remedy is not judgment as a matter of law for the losing party but rather a new trial.") (internal citation omitted).

Fed. R. Civ. P. 51(c)(1). *See, supra,* Part II.A. of this Decision and Order (summarizing relevant legal standard).

Rather, during the charge conference, Plaintiff merely reiterated an objection he had, moments before, asserted to the Proposed Jury Instructions, regarding whether the state-of-mind required by an Eighth Amendment excessive-force claim is malice and sadism or mere recklessness. That objection concerned only Question 1 of the Special Verdict Form. (Dkt. No. 68.)[14] That is why Plaintiff reiterated the objection during the during his discussion of Question 1. Plaintiff asserted no objection to Question 3. Indeed, Plaintiff expressly stated in the charge conference that the Proposed Jury Instruction on qualified immunity was "fine."

As a result, Plaintiff never made a timely objection regarding the asserted inconsistency of using Question 3 and Question 1 on the Special Verdict Form, as required by Fed. R. Civ. P. 51(c);[15] and the Court retained the use of those two questions in the Special Verdict Form (Dkt. No. 68).

Plaintiff argues that he "objected to posing . . . [Q]uestion [1] to the jury and had submitted to the Court a proposed Verdict Form (Docket No. 44) that would have asked the jury whether the officers 'violate[d] plaintiff's constitutional right to be free from cruel and unusual punishment' . . . [but that] [t]he Court overruled plaintiff's objection and instead used the 'maliciously and sadistically' language in its Special Verdict Form." (Dkt. No. 72, Attach. 2, at 2

---

[14]    *See also Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 79 (2d Cir. 1995) ("An objection to a ruling does not serve as a proxy for objections relating to different issues that arise because of that ruling.").

[15]    Although Fed. R. Civ. P. 51 mentions only "instructions," it applies also to verdict forms. *See Goetz v. Hershman*, 423 F. App'x 3, 4 (2d Cir. 2011); *Countryman v. Farber*, 340 F. App'x 703, 704 (2d Cir. 2009); *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002).

[attaching page "2" of Plf.'s Memo. of Law].)  However, that argument misses the point.  As stated above, Plaintiff's objection to Question 1 was not an objection to Question 3.

Moreover, his submission of a proposed Verdict Form three weeks before the June 13 charge conference (i.e., on May 23) that differed from the Special Verdict Form ultimately used is not an "objection" to the Court's Special Verdict Form for purposes of Fed. R. Civ. P. 51(c)(1),(2).  *See, supra,* Part II.A. of this Decision and Order (summarizing relevant legal standard); *see also* Fed. R. Civ. P. 51 Advisory Committee Note (2003) ("Many cases hold that a proper request for a jury instruction is not alone enough to preserve the right to appeal failure to give the instruction. The request must be renewed by objection.").[16]

Before proceeding to a discussion of the consequences of Plaintiff's failure to make a timely objection as required by Fed. R. Civ. P. 51(c)(1), the Court pauses to note that its above analysis should in no way be construed as a concession that Plaintiff's objection to Question 1 had merit.  Plaintiff's instruction would have essentially charged the jury that it could have found for Plaintiff on his Eighth Amendment "cruel and unusual punishment" claim *without* finding that Defendants acted maliciously and sadistically.  However, the "cruel and unusual

---

[16]     *See, e.g., Yore v. M/V LNG LEO,* 210 F.3d 356, at *1 (2d Cir. 2000) ("Yore did not preserve his objections to the jury instructions. He relied solely upon his submission of proposed jury instructions, which were the standard instructions for Jones Act cases. But a plaintiff may not rely on her submission of proposed jury instructions to preserve an objection.") (internal quotation marks omitted); *Caruso v. Forslund,* 47 F.3d 27, 31 (2d Cir. 1995) ("In this case, before the jury retired, the court specifically asked Caruso's attorney whether there were any exceptions to the charge as given. In response, Caruso's counsel stated that she had none. Accordingly, Caruso may not raise an objection to the charge in this court. *Nor may plaintiff rely on her submission of proposed jury instructions that included an instruction on punitive damages.*") (emphasis added); *King v. New York City Bd. of Educ., C.S.D. #28*, 96-CV-2730, 2000 WL 1897349, at *3 (E.D.N.Y. Dec. 19, 2000) ("A party cannot rely solely on the submission of a proposed jury instruction to preserve an objection to a jury charge that fails to include the instruction.").

punishment" invoked by Plaintiff's Eighth Amendment claim was the use of *excessive force*, which by necessity involves malice and sadism.

The pattern jury instruction cited by Plaintiff (5-87 *Modern Federal Jury Instructions* –Civil ¶ 87.03, Instruction 87-79A), in making a contrary argument, relies on a jury instruction from a solitary case (*Walker v. Caban,* 08-CV-3025 [S.D.N.Y.]), which merely states that the required mental state for an Eighth Amendment excessive-force claim is satisfied where the defendant acted "intentionally or recklessly" (leaving open the possibility that malice and sadism are still required); that instruction does not state that the mental state is satisfied where the defendant acted "maliciously, sadistically *or* recklessly," as requested by Plaintiff in this case.

In any event, to the extent that pattern jury instruction supports Plaintiff's argument, the instruction's supporting authority is not available on Westlaw, Lexis or PACER; the instruction does not appear to have been followed by any other reported decision for that point of law; and the instruction appears contrary to established Supreme Court precedent. For example, in *Whitley v. Albers*, 475 U.S. 312 (1986), the Supreme Court explained that, even though an express intent to inflict unnecessary pain is not required to establish an Eighth Amendment claim, a finding of malice and sadism is still required to establish an excessive-force claim under the Eighth Amendment.[17]

---

[17]     *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1986) ("An express intent to inflict unnecessary pain is not required [to establish an Eighth Amendment claim] . . . . Rather, our cases have established that the 'unnecessary and wanton' [the latter meaning *maliciously* indifferent] infliction of pain on prisoners constitutes cruel and unusual punishment prohibited by the Eighth Amendment, even in the absence of intent to harm. . . . [However,] [t]he general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged. . . . Where a prison security measure is undertaken to resolve a disturbance . . . , we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.") (internal quotation marks omitted; emphasis added).

As a result of Plaintiff's failure to make a timely objection as required by Fed. R. Civ. P. 51(c)(1), he must establish that there was (1) error (2) that is plain and (3) that affects substantial rights, and (4) and that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See, supra,* Part II.B. of this Decision and Order (summarizing relevant legal standard).

Here, there is no such error. It must be remembered that, "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962); *accord*, *Stephenson v. Doe*, 332 F.3d 68, 77 (2nd Cir. 2003) ("[S]eemingly inconsistent verdicts should be reconciled if possible."); *Tolbert v. Queens College*, 242 F.3d 58, 74-75 (2d Cir. 2001) ("[W]here the special verdict answers appear to be inconsistent but there is a view of the case that makes the jury's answers, they must be resolved that way.") (internal quotation marks omitted); *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir. 1988) ("It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them.") (internal quotation marks omitted).

The Court can imagine a view of the case that makes the jury's finding that Defendants Dinelle and Duckett "used force against [Plaintiff] maliciously and sadistically for the purposes of causing harm to him, and not in a good-faith effort to maintain or restore discipline" consistent with its finding that "a reasonable correctional official in [Defendants Dinelle's and Duckett's] situation would have believed that his actions did not violate the Plaintiffs federal constitutional or statutory rights."

More specifically, the jury could have found that Defendants Dinelle and Duckett had (due to their frustration with Plaintiff for not complying with their directives during the search) maliciously and not in good faith briefly used a de minimis amount of force against him, while at the same time finding that–*regardless of Dinelle's and Duckett's subjective states of mind*–a reasonable correctional official in Defendants Dinelle's and Duckett's situation could have mistakenly believed that their brief use of de minimis force did not violate Plaintiff federal constitutional rights because it was necessary to restore discipline, due to the fact that a convicted felon had just "come off the wall" during a search in a medium-security prison, and the fact that their use of force was pursuant to DOCCS' policy on inmate control.

It is important to remember that, in deciding whether a reasonable corrections officer in a defendant's situation would have known that his or her conduct violated a federal right, it is impermissible to consider the defendant's subjective state of mind–regardless of whether the defendant was acting in good faith, or was actually intending to harm the plaintiff.

This point of law was pronounced by the Supreme Court more than a quarter century ago, and has been repeated by the Supreme Court numerous times since then. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982) (abandoning the "subjective element" of the traditional qualified-immunity defense due to that element's incompatibility with *Butz v. Economou*, and adopting in its place an objective element focusing on whether "a reasonable person would have known" of the violation); *accord, Davis v. Scherer*, 468 U.S. 183, 191 (1984) ("*Harlow v. Fitzgerald* . . . rejected the inquiry into state of mind in favor of a wholly objective standard."); *U.S. v. Leon* 468 U.S. 897, 923, n.23 (1984) ("In *Harlow*, we eliminated the subjective component of the qualified immunity public officials enjoy in suits seeking damages for alleged

deprivations of constitutional rights."); *Anderson v. Creighton*, 483 U.S. 635, 645 (1987) ("[In] *Harlow*, . . . the Court completely reformulated qualified immunity along principles . . . , replacing the inquiry into subjective malice so frequently required at common law with an objective inquiry into the legal reasonableness of the official action."); *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) ("[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to that defense."); *Burns v. Reed*, 500 U.S. 478, 495, n.8 (1991) ("In *Harlow v. Fitzgerald*, . . . , we 'completely reformulated qualified immunity, . . . replacing the common-law subjective standard with an objective standard that allows liability only where the official violates clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks and citation omitted); *Wyatt v. Cole*, 504 U.S. 158, 165 (1992) (confirming that, in *Harlow v. Fitzgerald*, 457 U.S. 800 [1982], the Supreme Court adopted a "wholly objective standard").

This point of law has repeatedly been recognized by the Second Circuit.  *See, e.g., Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012) ("[T]he federal standard [for qualified immunity] . . . is objectively reasonable reliance on existing law . . . *see, e.g., Harlow*, 457 U.S. at 818 . . . .") (internal quotation marks and citations omitted); *Stein v. Board of City of New York, Bureau of Pupil Transportion*, 792 F.2d 13, 18 (2d Cir. 1986) ("[*Harlow*] eliminated the subjective intent element from the [qualified-]immunity defense . . . .").

This point of law has repeatedly been recognized by district courts within the Second Circuit.  *See, e.g., Rodriguez v. City of New York,* 97-CV-0217, 1999 WL 58911, at *4 (S.D.N.Y.

Feb. 8, 1999) ("While some of the officers and detectives involved in Rodriguez's arrest may have had a retaliatory motive, subjective bad faith is not relevant to the qualified immunity defense. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . .");*Volberg v. Pataki,* 917 F. Supp. 909, 918 (N.D.N.Y. 1996) ("Harlow held that malice, or subjective bad faith, on the part of government officials was no longer relevant in overcoming a claim of immunity.") (McAvoy, C.J.); *Lopez v. Johnson*, 92-CV-0374, 1993 WL 220547, at *3 (W.D.N.Y. June 15, 1993) ("*Harlow* removed the subjective element of the qualified immunity inquiry and limited such inquiry to a determination of the objective reasonableness of an official's conduct . . . .") (internal quotation marks omitted); *Rodrigues v. Village of Larchmont, N.Y.*, 608 F. Supp. 467, 476 (S.D.N.Y. 1985) ("*Harlow v. Fitzgerald* . . . removed the subjective element of the defense . . . ."); *Piccollela v. Rieck*, 555 F. Supp. 27, 27 (S.D.N.Y. 1982) ("The previously existing 'subjective element' of the [qualified immunity] defense has now been eliminated [by *Harlow v. Fitzgerald*].").

This point of law is included in pattern jury instructions that specifically address the issue. *See, e.g.,* Model Civ. Jury Instr. 3rd Cir. 4.7.2 *Section 1983–Affirmative Defenses–Qualified Immunity* (2011) ("One question that may sometimes arise is whether jury findings on the defendant's subjective intent are relevant to the issue of qualified immunity. Decisions applying *Harlow* and *Harlow*'s progeny emphasize that the test for qualified immunity is an objective one, and that the defendant's actual knowledge concerning the legality of the conduct is irrelevant.") (citing cases). Indeed, this point of law was contained in the Court's jury instructions, and was never objected to by Plaintiff in this case.

For these reasons, it is well settled that a defendant may be entitled to qualified immunity even where he has used excessive force. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 197 (2001) (holding that "the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest"); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that [their conduct is lawful] are entitled to immunity."); *Kent v. Katz*, 125 F. App'x 334, 335 (2d Cir. 2005) ("Plaintiff argues that . . . the jury's verdicts on excessive force and qualified immunity were legally inconsistent because the jury found that defendant had acted unreasonably in using excessive force, but that defendant had reasonably believed his conduct to be lawful. The Supreme Court has made it clear, however, that these are separate questions to which differing answers can be given."); *Stephenson v. Doe*, 332 F.3d 68, 77 (2nd Cir. 2003) ("The Supreme Court has recently made clear that even officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force. "') (citations omitted); *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) ("If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation. . . .  This inquiry focuses on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (internal quotation marks omitted); *Aczel v. Labonia*, 00-CV-1802, 2006 WL 2715345, at *3 (D. Conn. Sept. 22, 2006) ("A jury could therefore find that the force used was excessive contrary to clearly established 'generalized constitutional protections' but that a defendant was not liable 'in the specific context of the case' because it

was not clearly established to the defendant, acting as a reasonable officer in his position, that his use of force was excessive and therefore unlawful in the situation he confronted."), *aff'd in part and appeal dismissed in part*, 271 F. App'x 73 (2d Cir. 2008).

In arguing that qualified immunity is precluded by the jury's response to the Court's first special interrogatory, Plaintiff relies heavily on the fact that the jury found that Defendants acted maliciously and not in good faith in using excessive force. However, again, the use of excessive force (in violation of the Eighth Amendment prohibition against "cruel and unusual punishments") *always* involves a finding of malice, sadism and an absence of a good faith.

This fact was recognized by the Supreme Court more than a quarter century ago, and has been repeated by the Supreme Court numerous times since then. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) ("Where a prison security measure is undertaken to resolve a disturbance . . . , we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.") (internal quotation marks omitted); *accord, Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) ("[W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312, 320-21 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[A]n Eighth Amendment claimant [alleging excessive force] must show . . . that officials applied force maliciously and sadistically for the very purpose of causing harm . . . .") (internal quotation marks omitted); *Porter v. Nussle*, 534 U.S. 516, 528

(2002) ("[A] prisoner alleging excessive force must demonstrate that the defendant acted "maliciously and sadistically to cause harm . . . .") (internal quotation marks omitted); *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1180 (2010) ("In order to prevail [on his excessive-force claim], Wilkins will ultimately have to prove not only that the assault actually occurred but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline.") (internal quotation marks omitted).

This fact has repeatedly been recognized by the Second Circuit. *See, e.g., Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) ("For excessive force claims, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7, . . . (1992).") (internal quotation marks omitted); *accord, Edwards v. Tarascio*, 369 F. App'x 182, 184 (2d Cir. 2010); *Murray v. Johnson No. 260*, 367 F. App'x 196, 198 (2d Cir. 2010); *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008); *Baskerville v. Mulvaney*, 411 F.3d 45, 49 (2d Cir. 2005); *Smith v. Sinclair*, 104 F.3d 356, at *3 (2d Cir. 1996); *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996).

This fact has repeatedly been recognized by district courts within the Second Circuit. *See, e.g., Vogelfang v. Riverhead Cnty. Jail*, 04-CV-1727, 2012 WL 1450560, at *7 (E.D.N.Y. Apr. 19, 2012) ("Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 . . . (1992) . . . .") (internal quotation marks omitted); *accord, Rodriguez v. City of New York*, 802

24

F. Supp.2d 477, 480 (S.D.N.Y. Aug. 9, 2011); *Johnson v. Conners*, 04-CV-0632, 2011 WL 239796, at *1 (N.D.N.Y. Jan. 24, 2011) (Kornmann, V.J.).

This fact has repeatedly been recognized in circuit court decisions from outside the Second Circuit. *See, e.g., Cabaniss v. City of Riverside*, 231 F. App'x 407, 418 (6th Cir. 2007) ("[W]e do not find that Carlton acted with excessive force in using pepper spray, which necessarily forecloses the argument that he acted maliciously."); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) ("This standard [for excessive force under the Eighth Amendment] necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction. . . . For this reason, under the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force.").

This fact has repeatedly been recognized in district court decisions from outside the Second Circuit. *See, e.g., Jackson v. Palombo*, 10-CV-1129, 2013 WL 164220, at *4 (E.D. Cal. Jan. 15, 2013) ("A finding in Plaintiff's favor on his [Eighth Amendment] excessive force claim would mean that Defendants used physical force to maliciously and sadistically to cause Plaintiff harm rather than in a good-faith effort to maintain or restore discipline."); *Bingham v. Kochevar*, 10-CV-0604, 2012 WL 2675260, at *11 (D. Colo. March 23, 2012) ("Mr. Bingham conclusorily alleges but does not present any evidence to show that Defendant Aultman acted with a sufficiently culpable state of mind, the second prong of an Eighth Amendment excessive force claim, by sadistically or maliciously applying force for the purpose of causing harm."); *Padgett v. Caruso*, 10-CV-0950, 2011 WL 4701765, at *6 (W.D. Mich. 2011) ("The subjective element of an Eighth Amendment excessive force claim is the requirement that the defendant have a

sufficiently culpable state of mind. . . . The plaintiff is required to show that the defendants acted maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline.") (internal quotation marks and citation omitted).

This fact is commonly included in pattern jury instructions. *See, e.g.,* O'Malley, Grenig & Lee, 3B *Fed. Jury Prac. & Instr*. § 166.23 (5th ed. 2012) (including following language in pattern jury instruction for excessive-force claim pursuant to 42 U.S.C. § 1983: "In order to prove a violation under the Eighth Amendment, plaintiff [must] show that defendant prison officials unnecessarily and wantonly inflicted pain on plaintiff. Whether a use of force against a prison inmate is unnecessary or wanton depends on whether force was applied in a good faith effort to maintain or restore discipline, or whether it was done maliciously or sadistically to cause harm."); N.Y. Pattern Jury Instr.–Civil 3:60 (3d ed. 2012) (Supplemental Instructions) ("The critical inquiry [on an excessive-force claim brought under federal civil rights law] is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm . . . ."); Pattern Civ. Jury Instr. 5th Cir. 10.5 *Eighth Amendment (Excessive Force)* (2009) ("In order to prove a violation under the Eighth Amendment, the plaintiff must show that the defendant(s) unnecessarily and wantonly inflicted pain on him. Whether a use of force against a prison inmate is unnecessary or wanton depends on whether force was applied in a good faith effort to maintain or restore discipline, or whether it was done maliciously or sadistically to cause harm. In order to prove a violation under the Eighth Amendment in this case, therefore, the plaintiff must prove . . . [t]hat the defendant(s) used force against the plaintiff maliciously and sadistically, for the very purpose of causing plaintiff harm . . . ."); Fed. Civ. Jury Instr. 7th Cir.

7.15 *Eighth Amendment: Excessive Force Against Convicted Prisoner-Elements* (2010) ("To succeed on his claim of excessive use of force, Plaintiff must prove . . . [that, inter alia,] Defendant intentionally used extreme or excessive cruelty toward Plaintiff for the purpose of harming him, and not in a good faith effort to maintain or restore security or discipline . . . ."); Model Civ. Jury Instr. 9th Cir. 9.24 *Particular Rights-Eighth Amendment-Prisoner's Claim of Excessive Force* (2007) ("In order to prove the defendant deprived the plaintiff of this Eighth Amendment right [to be free from cruel and unusual punishment in the form of excessive force], the plaintiff must prove . . . [that, inter alia,] . . . the defendant acted maliciously and sadistically for the purpose of causing harm . . . . In determining whether the defendant used excessive force in this case, consider . . . whether defendant applied the force in a good faith effort to maintain or restore discipline . . . ."); Pattern Civ. Jury Instr. 11th Cir. FI 2.3.1 *Civil Rights-42 USC § 1983 Claims-Eighth Amendment Claim-Convicted Prisoner Alleging Excessive Force* (2005) ("Whether or not any force used in this instance was excessive is an issue for you to decide on the basis of whether such force, if any, was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

It is only a Fourth Amendment excessive-force claim that may be established without a finding of malice. *See, e.g, Lampkin v. Little*, 286 F.3d 1206, 1211 (10th Cir. 2002) ("[T]he jury's determination that Little used excessive force against Lampkin [in violation of the Fourth Amendment] did not require a finding of bad faith. Rather, excessive force requires an inquiry into the objective reasonableness of an official's actions . . . ., as opposed to an inquiry into the official's state of mind.") (citations omitted).

Because of this improper-motive element of an excessive-force claim, the rule that Plaintiff desires (i.e., that a finding of bad faith precludes an officer's entitlement to qualified immunity) would impermissibly preclude a reliance on qualified immunity in *all* cases in which a defendant has been found to have used excessive force. While such a per-se ban on the qualified-immunity defense may be the rule under New York State law, it is not the rule under federal law. As the Second Circuit has explained,

> In contrast to the federal standard [for qualified immunity], which is objectively reasonable reliance on existing law, . . . the New York standard for entitlement to qualified immunity has both objective and subjective components. . . . The subjective component makes qualified immunity entirely unavailable if there are "undisturbed findings of bad faith . . . .

*Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012) (internal quotation marks and citations omitted).

The two Second Circuit cases cited by Plaintiff in urging the Court to adopt a contrary rule are clearly distinguishable from the case at hand. *See Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990); *Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003).

In *Finnegan v. Fountain*, 915 F.2d 817 (2d Cir. 1990), the Second Circuit ordered a new trial on an excessive-force claim, because a special verdict entered by the jury finding that an officer had acted "maliciously, wantonly or oppressively" for purposes of an excessive-force claim "plainly contradicted" a special verdict entered by the jury finding that the officer acted in "good faith" for purpose of his qualified-immunity defense. *See Finnegan v. Fountain*, 915 F.2d 817, 820 (2d Cir. 1990), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 204 (2001). However, here, there was no special verdict entered by the jury finding that Defendants Dinelle or Duckett acted "in good faith" for purposes of their qualified-immunity defense; rather,

the special verdict regarded only reasonableness, as it should. For this same reason, the Seventh Circuit case cited by Plaintiff–*Bates v. Jean*, 745 F.2d 1146 (7th Cir. 1984)–is distinguishable.

Moreover, in *Stephenson v. Doe*, 332 F.3d 68 (2nd Cir. 2003), the Court ordered a new trial on an excessive force claim, where a special verdict finding that defendant "used excessive force" was inconsistent with a special verdict finding that defendant "was entitled to qualified immunity," because, *inter alia*, (1) rather than submit a special interrogatory on qualified immunity (as agreed-upon by the parties and the court), the judge simply submitted the qualified-immunity issue to the jury, and (2) rather than present the jury with any instructions "about possible ambiguities in the law with respect to the circumstances in [the] case or about [defendant's] state of knowledge about the law," the judge simply "told [the jury] that the excessive force instruction represented 'clearly established law.'" *See Stephenson v. Doe*, 332 F.3d 68, 74-75, 77-79 (2nd Cir. 2003). However, here, neither of those two things occurred. To the contrary, the jury was provided with a special interrogatory on qualified immunity, and the were carefully instructed on both it and the standard governing an excessive-force claim.

With regard to the Eleventh Circuit case relied on by Plaintiff, a careful reading of that case, and the case on which it relies, indicates that, with all due respect to the Eleventh Circuit, its contrary view (i.e., that a finding of excessive force precludes a finding of qualified immunity) stems from an apparent misapplication of *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing *Johnson v. Breeden*, 280 F.3d 1308 [11th Cir. 2002]). In particular, in *Johnson v. Breeden*, the Eleventh Circuit reasoned as follows:

So, where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*.

*Johnson v. Breeden*, 280 F.3d 1308,1321-22 (11th Cir. 2002).

However, all that *Hudson* appears to have held was that a prison official's malicious or sadistic use of force always violates contemporary standards of decency, for purposes of establishing an excessive-force claim (i.e., whether or not significant injury is present), *not for purposes of precluding a qualified-immunity defense*. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("In the excessive force context, such standards always are violated when prison officials maliciously and sadistically use force to cause harm, . . . whether or not significant injury is evident.").[18]

Moreover, to view *Hudson* as somehow precluding, on a per-se basis, the qualified-immunity defense in cases of excessive force (again, which always involve an evil state of mind) would be to disregard the well-established point of law that a defendant may be entitled to qualified immunity even where he has used excessive force. Such a view would also disregard *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982) (abandoning the "subjective element" of the traditional qualified-immunity defense), and its progeny. Such a view would also disregard

---

[18]     This distinction is possible because, while the universal violation of decency standards (in cases of maliciousness and sadism) may impact whether a law is "clearly established," it may not impact whether it was "objectively reasonable" for an official at the time of the challenged action to believe his acts were lawful–which is a *separate* issue. *See Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) ("[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful.").

*Crawford-El v. Britton*, 523 U.S. 574 (1998), which expressly held that "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to that defense."  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

In *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998), the Supreme Court emphasized what had already been explained in *Harlow*–that the two inquiries (i.e., the establishment of improper motive for purposes of plaintiff's affirmative case and the establishment of objective reasonableness for purposes of defendant's affirmative defense of qualified immunity) are *separate*:

> [A]lthough evidence of improper motive is irrelevant on the issue of qualified immunity, it may be an essential component of the plaintiff's affirmative case. Our holding in *Harlow*, which related only to the scope of an affirmative defense, provides no support for making any change in the nature of the plaintiff's burden of proving a constitutional violation.

*Crawford-El v. Britton*, 523 U.S. 574 (1998).

As a result, under *Crawford-El*, the fact that a plaintiff has succeeded in establishing an improper motive for purposes of his affirmative case does not mean that a defendant cannot establish the objective reasonableness of his actions for purposes of his affirmative defense of qualified immunity.  That is why the Supreme Court in *Crawford-El* explained, "Our consideration of the immunity issues in . . . *Harlow* itself assumed that [the plaintiff] would be entitled to prevail *but for* the immunity defense[]."  *Crawford-El*, 523 U.S. at 588-89 (emphasis added); *see also Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (observing that "the determination of whether the plaintiff has asserted a violation of a constitutional right at all" is a "necessary concomitant" to the threshold immunity question).

Finally, any argument that consideration of improper motive during a qualified-immunity analysis is permitted solely when the underlying claim (to which qualified immunity is posed as a defense) contains improper motive as an element is unavailing, given that both *Harlow* and *Crawford-El* involved claims that contained as an element an improper motive–specifically an *intent to retaliate* against the plaintiff for exercising his First Amendment rights.

For all of these reasons, the Court finds that there was no error in doing so in this case.

Even if there was an error, it was far from *plain*. For purposes of a plain-error review, a "plain" error is, *inter alia*, an "obvious" one. *See Black's Law Dictionary* at 622 (9th ed. 2004) (defining a "plain error" as, *inter alia*, an "obvious" one).[19] Here, it is difficult to imagine how the asserted error could be characterized as "obvious," given (1) *Harlow, Crawford-El,* and their progeny, and (2) what Plaintiff repeatedly has conceded is the lack of controlling decisions by the Second Circuit on the issue presented (*see* Dkt. No. 72, Attach. 2, at 3 [attaching page "3" of Plf.'s Memo. of Law, acknowledging that "the Second Circuit has not specifically addressed the issue of whether corrections officers who act 'maliciously and sadistically' can also be entitled to qualified immunity]; Dkt. No. 76, at 3 [attaching page "3"" of Plf.'s Reply Memo. of Law, acknowledging that "there has been no definitive pronouncement by the Second Circuit [on the issue in question]").[20]

---

[19]     *See also U.S. v. Olano,* 507 U.S. 725, 734 (1993) ("[For purposes of plain error rule] '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.'"); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256 (1981) ("Plain error" review under Rule 51 is suited to correcting obvious instances of injustice or misapplied law.").

[20]     *See City of Newport*, 453 U.S. at 256-57 ("[A district] court's interpretation of the contours of municipal liability . . . hardly could give rise to plain judicial error since those contours are currently in a state of evolving definition and uncertainty."); *Lynch v. Town of Southampton*, No. 07-3478, 2008 WL 5083010, at *2 (2d Cir. Dec. 2, 2008) ("Because this Circuit has not yet addressed whether claims of termination from volunteer positions based on protected conduct are equivalent to, or should be analyzed differently from, more traditional claims of termination from salaried government positions, we identify no 'plain error' warranting the exercise of such discretion in this case.") (internal quotation marks omitted); *Getty Petroleum*

In any event, even if there was a plain error, it did not affect Plaintiff's substantial rights, given the copious evidence supporting the jury's finding that a reasonable corrections officer could have believed that Defendants Dinelle's and Duckett's actions did not violate the Plaintiff's federal constitutional or statutory rights.

Finally, even if there was such an error affecting Plaintiff's substantial rights, it did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. By failing to properly object to the use of Questions 1 and 3 of the Special Verdict Form (which would have prompted the Court to "correct" the perceived error by altering the language of Question 1), Plaintiff appears to have made a strategic choice to gamble that the jury would answer "no" to Question 3 of the Special Verdict Form, believing that if jury answered "yes" he could later assert that perceived error (in a post-judgment motion or appeal). His miscalculation hardly impugns the fairness, integrity, or public reputation of the judicial proceedings.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment notwithstanding the verdict pursuant to Fed. R. Civ. P. 50(b), or for a new trial pursuant to Fed. R. Civ. P. 59(a) (Dkt. No. 72) is

**DENIED**.

Dated: March 8, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

*Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 108 (2d Cir. 1988) ("Despite defendants' arguments to the contrary, we believe that lacking clear precedent, the district court's punitive damages jury charge was not 'plain error.'").